**Timothy RICE et al., Plaintiffs,**

v.

**AMERICAN PROGRAM BUREAU et al., Defendants.**

**No. 71 Civ. 1804.**

United States District Court, S. D. New York.

May 7, 1971.

Hofer & Rich, New York City, for plaintiffs.

Beldock & Kushnick, New York City, for American Program Bureau.

MOTLEY, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case is before this court on the motion of plaintiffs for a preliminary injunction enjoining defendants from: 1) presenting or performing the Rock Opera "Jesus Christ Superstar" or any portion thereof; 2) advertising or promoting any such performances and directing that all advertisements or promotional or written materials advertising, promoting or mentioning such performances be delivered to the court for destruction; 3) printing and using the unique design of plaintiff MCA Records, Inc., and directing that all plates, molds and printed material containing such design should be delivered to the court for destruction, pending the outcome of the trial. Rule 65, Fed.R.Civ.P.; 17 U.S.C. § 101.

A hearing on the motion was held on April 28 and 29, 1971, following which a temporary restraining order issued pending the court's decision on this motion.[1] Rule 65, Fed.R.Civ.P. The motion for preliminary injunction is now granted, except that there is to be no destruction of materials delivered to the court until the final disposition of this action.

The Rock Opera "Jesus Christ Superstar" was composed by plaintiff Timothy Rice, who wrote the lyrics and libretto, and Andrew Lloyd Webber, who composed the music. The opera is the

1. The Temporary Restraining Order restrained the defendants from the following:
1) presenting or performing the opera "Jesus Christ Superstar" or any portions thereof;
2) advertising or promoting any such performances, and that they deliver to the court all advertisements or promotional or written materials advertising, promoting or mentioning such performances of "Jesus Christ Superstar";
3) printing and using the design of MCA Records, Inc. which is contained on the Decca Record album of "Jesus Christ Superstar", and that they deliver to the court all plates, molds and printed materials containing said design.

story of the last seven days in the life of Christ.

In accordance with an agreement between plaintiffs Rice and Webber and Leeds Music, Limited, the copyrights to all of the compositions, except one (King Herod's Song), were assigned to Leeds. Performance or dramatic rights in the opera vested in the two composers under the terms of the agreement. All of the compositions and the libretto of the opera have been copyrighted by Leeds Music, Limited. (Pls' Exh. A). The copyright registration for the opera is for copyright in "dramatic" or "dramatico-musical" compositions, pursuant to 17 U.S.C. § 5(d). The copyright certificates give an opera as an illustration of a "dramatico-musical" composition.

An agreement between the two composers and the plaintiff, Stigwood Group, Limited granted Stigwood the sole and exclusive license to perform the opera on the professional stage. It also provides that the subsidiary performance rights (e. g. repertory concerts, etc.) would be held jointly by Stigwood and the two composers. Accordingly, Stigwood intends to present the opera on the Broadway stage this Fall. After the Broadway opening, Stigwood will present the opera in London and other cities throughout the United States.

Plaintiff MCA Records, Inc. is a corporation engaged in the business of recording, producing and distributing phonograph records and tapes for sale. It owns the record label "Decca Records." Until April 1, 1971 Decca Records was a division of MCA, Inc. In or about November 1970, Decca received a license from Leeds Music, Limited pursuant to which it released a phonograph album and tape entitled "Jesus Christ Superstar", which contains the opera. Decca created an original pictorial design for use on the cover of its album and on the labels of the records. This design has been copyrighted by Decca. (Pls' Exh. 6). The design consists of two angels perched upon the two ends of a crescent with a corkscrew design at the bottom. Decca has the exclusive right and privilege to its copyright. Decca has engaged in a program of promoting and advertising the album and libretto, and has spent substantial sums on said promotion and advertising. It extensively utilizes its design in connection with such promotion and advertising. (Pls' Exhs. 3, 4, 5). The record has been highly praised in the press. (Pls' Exh. 2).

Defendant American Rock Opera Company admits in its answering affidavit that the Rock Opera "Jesus Christ Superstar" has met with phenomenal success. Musical selections from the opera are constantly played on both AM and FM radio stations, says defendant.

About seven or eight weeks ago, Michael O'Daniel and Sidney Dockser of the defendant American Program Bureau requested the American Society of Composers, Authors and Publishers (ASCAP) to issue an ASCAP concert promoter's license with regard to the musical compositions in the ASCAP repertory. Such a license permits the promoter to perform the non-dramatic musical compositions of ASCAP's members in consideration of specified license fees. In addition to requesting this license, O'Daniel and Dockser asked whether they could perform "Jesus Christ Superstar". They were told by John Kloberg, Manager of ASCAP's district office in Boston, that ASCAP could not issue a license for performances of compositions from that opera because such compositions are "dramatico-musical" compositions to which the ASCAP license does not extend. This was later confirmed by the New York office of ASCAP to Kloberg who, in turn, so advised O'Daniel and Dockser.[2]

Thereafter, on or about March 4, 1971, ASCAP entered into a license agreement with American Program Bureau. Paragraph 1 of the license limits the grant to "non-dramatic renditions of the separate musical compositions copy-

---

**2.** ASCAP also advised all of its offices to the same effect in writing (Kloberg Affidavit).

righted by members of" ASCAP. Paragraph 3 excludes oratorios, choral, operatic and dramatico-musical works. This paragraph reads:

"3. This license shall not extend to or be deemed to include:

(a) Oratorios, choral, operatic or dramatico-musical works . . . in their entirety or songs or other excerpts from operas or musical plays accompanied . . . by words . . . of the work from which the music is taken; but fragments or instrumental sections from such works may be instrumentally rendered without words, dialogue, costume, accompanying dramatic action or scenic accessory, and unaccompanied by any stage action or visual representation (by motion picture or otherwise) of the work of which such music forms a part.

(b) Any work (or part thereof) whereof the stage presentation and singing rights are reserved."

On March 15, 1971, Dockser wrote ASCAP advising that his client, an ASCAP licensee, desired to perform the music from the album "Jesus Christ Superstar". On March 18, 1971, Lenore Terry of ASCAP replied to Dockser's letter requesting him to identify the ASCAP licensee he represents and to indicate the nature of the intended performances. Dockser responded on March 22, 1971 and advised ASCAP that his client is American Program Bureau. He further advised that his client intended to perform "non-dramatic performances of excerpts from the published songs before college audiences." On April 2, 1971 Mr. Paul S. Adler of ASCAP responded by letter to Dockser and advised him that performances of excerpts from "Jesus Christ Superstar" may, indeed, be dramatic performances and that such performances are not included in the ASCAP license. Mr. Adler also wrote Dockser that American Program Bureau is not authorized by its ASCAP license to use an advertisement which gives the impression that "Jesus Christ Super-

star" is being performed in whole or in part, since "These rights are expressly reserved by [its] members."

On April 13, 1971, the defendant American Rock Opera Company, without license from any of the plaintiffs, performed the opera "Jesus Christ Superstar", as its program shows, in its entirety, in Powell Symphony Hall, St. Louis, Missouri with the St. Louis Symphony Orchestra. (Pls' Exh. C). It has contracted to perform the opera in at least twelve (12) other cities. (See list of cities handed to court on issuance of temporary restraining order).

Defendants have used the Decca Record design in connection with their promotional materials (Pls' Exhs. C and 7). Defendant American Rock Opera Company admits the similarity of the design and admits that American Program Bureau in its booking agent. (Affidavit of Robert Yde).

Defendant does not dispute plaintiffs' copyrights. Its sole defense to the motion for preliminary injunction is that only "musical selections from the opera are being presented without benefit of costumes, scenery, or dramatic gestures" and that such is authorized by its license from ASCAP.

The evidence presented on the hearing of this motion shows, however, that the opera has been presented in its entirety (Pls' Exhs. C and 7). Moreover, defendant offered no proof of its allegation that only certain musical selections were being offered without benefit of costumes, scenery, or dramatic gestures in the face of its own literature which makes out a prima facie case to the contrary.

The ASCAP license plainly excludes operas and dramatico-musical works in their entirety.

This court has jurisdiction of the subject matter of this action, 28 U.S.C. § 1338, 17 U.S.C. § 1 et seq., 17 U.S.C. §§ 101, 112.

The court has jurisdiction over American Rock Opera Company, Inc., sued herein as American Rock Opera Compa-

ny, its agent, servants, and employees. The American Rock Opera Company was duly served with a copy of the motion, filed an opposing affidavit, and appeared by counsel upon the hearing of this motion.

■ This court finds and concludes that plaintiffs have sustained their burden upon this motion of showing a prima facie case of copyright infringement as to all the copyrights involved and discussed above. They need not make a detailed showing of irreparable harm. American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903 (2d Cir. 1968); Marvin Worth Productions v. Superior Films Corp., 319 F.Supp. 1269 (D.C.1970); Inge v. Twentieth Century Fox Film Corp., 143 F.Supp. 294 (S. D.N.Y.1956).

■ The facts in the instant case are clearly distinguishable from the sole case on which defendant relies. April Productions, Inc. v. Strand Enterprises Inc., 221 F.2d 292 (2d Cir. 1955). Although the license issued here by ASCAP to American Program Bureau is identical in relevant part to the license involved in April Productions, *supra*, the facts are materially different. There the songs in question were in the ASCAP repertoire; here they are not. ASCAP denies that it intended to license the playing of any musical composition in any fashion from "Jesus Christ Superstar" and has presented evidence of its conversations and correspondence with representatives of American Program Bureau to prove it. No such problem appears to have been involved in *April Productions*. The question there was whether there had been a dramatic rendition as opposed to an authorized non-dramatic rendition. Here no rendition was authorized, be it dramatic or non-dramatic. There also a mere medley of songs from the "Student Prince" was sung in the ninth scene in a series of ten scenes in an entire night club performance unrelated to the "Student Prince". Such a rendition was held to be "non-dramatic" within the mean-

ing of the license. Here the evidence thus far adduced shows that the entire dramatico-musical work "Jesus Christ Superstar" was performed in its entirety. As the court held in *April Productions*, the performance of any operatic or dramatico-musical works in its entirety are not included in the ASCAP licenses.

The motion for preliminary injunction is, therefore, granted. Submit order.